CULPEPPER, Judge.
Plaintiff sued for the balance of $18,054 allegedly due by defendant under a contract. The district court awarded plaintiff judgment for $15,654. Defendant appealed. We affirm.
The substantial issue is what was the agreement between the parties, an issue which is factual and depends largely on the credibility of the witnesses.
The defendant, Standard Fittings Company, operates a large machine shop and manufacturing plant in Opelousas, Louisiana. Its president and general manager is Mr. Erwin Davlin. Several times, Mr. Davlin, on behalf of Standard Fittings Company, had entered into contracts with the United States Department of Labor to train for industrial employment persons who were otherwise unemployable. In the course of the performance of one of these contracts, under which the subcontractor was Skills Development, Inc., Mr. Davlin met Mr. Nolan Foret, the center director for that firm. Davlin and Foret started discussing an agreement whereby Foret would subcontract to furnish certain portions of the training required under contracts secured by Standard from the Government.
Ultimately, Mr. Davlin offered to undertake a Department of Labor contract with Mr. Foret acting as subcontractor for him. Mr. Davlin drew up, in the form of a handwritten memo filed in evidence as exhibit P-2 a “proposed understanding” of the basis on which they would work under the Department of Labor contracts. The memo was undated and unsigned but both Davlin and Foret were fully aware of its contents and Foret began to take certain actions on the basis of the memo. Mr. Davlin took the memo to his attorney, Mr. Schiff, for use in preparing a formal written contract. Mr. Foret ceased employment with Skills Development and organized Four-A of Lafayette, Inc. to furnish training services as a subcontractor of Standard Fittings.
Mr. Davlin, Mr. Foret, Mr. Schiff and Mr. Toups, comptroller for Standard Fittings Company, met to discuss the written contract which Schiff had prepared. It contained generally the provisions of the earlier memo, except that it included a new provision that Standard could seek other *903 such training contracts for other employers. Mr. Foret refused to sign because he obj ected to this new provision.
It is at this point that Davlin contends he offered and Foret accepted an alternative agreement. He says he agreed to pay Mr. Foret $200 a week for his services as personnel director and $6,500 for performance of only the “Orientation” portions of the Department of Labor contract. Davlin contends this is corroborated by Foret’s letter (D-2) written to Standard’s comptroller requesting payment of $5,920. For-et testified this letter was merely to inform the comptroller as to the method of payment for certain interim funds which For-et based on the Department of Labor contract price for “Orientation”.
The contract with the Department of Labor was obtained by Mr. Davlin to employ and train 40 workers for a total price of $56,840. Training began and services were performed by Four-A of Lafayette, Inc. under its subcontract with Standard Fittings Company to furnish certain portions of the training. Four-A of Lafayette, Inc. sent bills for its work to Mr. Davlin of Standard Fittings. Bills were sent and paid in the months of August, September, October, November and December of 1971. Only a part of the bill for January of 1972 was paid, and the February bill, as well as other subsequent ones were not paid. Mr. Foret then prepared a final bill showing Four-A earned a total of $22,880 under its subcontract, of which Standard had paid $4,825, leaving $18,054 due. Defendant refused to pay this bill and this suit followed.
Mr. Foret claims the handwritten memorandum (P-2) represents his contract with Standard Fittings Company and that he quit his job with Skills Development, Inc. in reliance on that memo. He contends the document designated “D-2” is simply an arrangement for the payment of part of the funds due under his subcontract. Mr. Davlin, however, claims the agreement between him and Mr. Foret was simply to pay Mr. Foret $200 a week and $6500 for performance of only the “Orientation” phase of the Department of Labor contract. He says the document (D-2) was prepared by Mr. Foret to particularize and finalize that oral agreement.
The trial judge determined that the handwritten memorandum designated “P-2” was the contract agreed upon by the parties. In his written reasons for judgment he said: “. . .an original agreement (P-2) was entered into and acted upon’’. Thus, he found the plaintiff was entitled to the $18,054 sued for, but he gave defendant credit for $2400 ($200 per month paid to Foret for 12 months), thereby reducing the award to $15,654.
The ultimate issue in this case resolves itself into an evaluation of credibility. We will not disturb the finding of fact of the trial judge, which is based on a reasonable evaluation of credibility. See Canter v. Koehring, 283 So.2d 716 (La., S.Ct.1973).
For the reasons assigned, the judgment of the district court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Affirmed.